UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DANIELLE COCHRAN CARNETT,<br><br>Plaintiff,<br><br>-against-<br><br>TIAA INSURANCE COMPANY, AND NUVEEN, LLC,<br><br>Defendants. | X<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>X | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Danielle Cochran Carnett, by and through her attorneys, Harding Mazzotti, LLP, hereby files this Complaint against Defendants, TIAA Insurance Company and Nuveen, LLC (collectively referred to as "Defendants"), to allege upon knowledge concerning her own experience, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action charging that Defendants violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"), "the Act", to recover lost wages, and an additional amount as liquidated damages, reasonable attorneys' fees and costs, and to remedy violations of state common law based upon the pendent jurisdiction of this Court pursuant to Gibb, 38 U.S. 715 (1966), and 28 U.S.C. §1367; the New York State Human Rights Law, New York State Executive Law §296 et. seq. ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"), and seeks to recover lost wages, emotional distress, punitive damages, reasonable attorneys' fees and costs as a result of being discriminated against on the basis her disability.

**JURISDICTION AND VENUE**

2. This Court has original jurisdiction over the subject matter of Plaintiff's claims pursuant to 28 U.S.C §1331, as her claims arise under the laws of the United States, namely Americans with Disabilities Act ("ADA").

3. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to 28 U.S.C. § 1367.

4. Venue is properly laid in the Southern District of New York, pursuant to 28 U.S.C. §1391 (b)(1) & (2), because the Southern District of New York is the judicial district in which Defendants' offices which Plaintiff was associated with are located. Additionally, the Southern District of New York is the judicial district in which a substantial part of the events forming the basis of this lawsuit are alleged to have been committed.

**ADMINISTRATIVE REQUIREMENTS**

5. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") (Charge No.: 525-2023-00220) on October 31, 2022.

6. On February 29, 2024, the EEOC issued Plaintiff a Notice of Dismissal and Right to Sue.

7. Pursuant to the request of the Defendants, Plaintiff's counsel and Defendants' counsel entered into a series of tolling agreements with an ultimate expiration date of December 27, 2024.

8. The Plaintiff filed her complaint on or before the expiration date reflected in the current tolling agreement.

## THE PARTIES

9. That at all times hereinafter mentioned, Plaintiff is a resident of Greenwich, New York, County of Washington.

10. That at all times hereinafter mentioned, Defendant, TIAA Insurance Company ("TIAA"), is a private company, organized and existing under the laws of the State of New York with a business address of 730 Third Avenue, New York, New York 10017.

11. That at all times hereinafter mentioned, Defendant, Nuveen LLC ("Nuveen"), is a private company, organized and existing under the laws of the State of New York with its headquarters of parent company TIAA located at 730 Third Avenue, New York, New York 10017.

## Relevant Facts

### Plaintiff's employment history with Nuveen/TIAA

12. Plaintiff was employed as a Senior Managing Director for the Defendants at the time of her September 2022 termination. During the course of her twenty-two years of employment with Defendants, Plaintiff traveled to Defendants' New York City offices for meetings and work purposes. In fact, the only offices of Defendants that Plaintiff was associated with were in New York County at the address in paragraph 10.

13. Plaintiff was a valued and integral member of the Nuveen/TIAA team for twenty-two years prior to her termination in September 2022.

14. Up to and at the time Plaintiff was terminated by the Defendants she was qualified for the position of Senior Managing Director.

15. From the beginning of Plaintiff's employment until her termination, her work performance met or exceeded the reasonable expectations for the position she held.

16. The Plaintiff intended to remain in Defendants' employ until the time she would retire and had dedicated the majority of her working life to Nuveen/TIAA. During the entirety of her career at Nuveen/TIAA, Plaintiff had absolute consistent satisfactory performance reviews, steady promotions, salary increases and rising performance bonuses. Clearly all of the documentation in Plaintiff's personnel file will show she had committed to a permanent career with Defendants. In fact, in 2020 there was an available voluntary reduction in force incentive to retire/transition out which Plaintiff declined.

17. From 2001 (only a year after her hiring) through Plaintiff's termination, Plaintiff was a remote employee. The majority of her work hours she worked from her home office. However, her position also did include business travel. Notably, Defendants allowed Plaintiff to travel for business without a Covid 19 vaccination for 2.5 years, but nonetheless terminated her for not being vaccinated in September 2022.

18. Plaintiff was terminated from her position with Defendants in September 2022 for failure to receive two Covid 19 vaccinations.

**Plaintiff's medical conditions and her Request for an accommodation**

19. Beginning in 2010 Plaintiff was diagnosed and treated with chronic autoimmune conditions that are manageable but incurable. The Plaintiff has Raynaud's Syndrome and chronic medical complications sequalae to a B-19 infection. Her rheumatologist, Dr. Derk, also diagnosed her with early-stage Scleroderma in 2010 as per her medical records. Additionally, her medical records include radiological impressions of Rheumatoid arthritis. These are all autoimmune conditions.

20. Plaintiff suffered from pre-existing autoimmune health conditions for over 10 years prior to the covid vaccine mandate issued by Defendants.

21. Autoimmune diseases are a "disability" as defined under the ADA and the NYSHRL.

22. Plaintiff managed her conditions with the aid of her physicians and specialists and her health was never the subject of discussion in any respect related to her employment with Defendants – that is until 2021/22 when Defendants insisted that Plaintiff, a remote employee with a medical condition covered by the ADA, receive covid vaccinations, against the advice of her physician.

23. In late 2021 when Defendants instituted their required Covid-19 vaccination policy for all employees (remote and otherwise), Defendants stated that employees who could not be vaccinated for medical reasons would have requests for exemptions considered. Plaintiff consulted with Dr. Caroline Hartridge before determining whether it was medically advised to receive Covid vaccines due to her medical conditions.

24. It was recommended by Dr. Hartridge that Plaintiff refrain from Covid 19 vaccination because of her autoimmune conditions and the risk that the vaccination could pose to her health. The Plaintiff considered Dr. Hartridge's recommendation seriously and determined that she would not risk the health complications that could arise from the covid vaccine in light of her medical conditions.

25. Plaintiff was not anti-vaccine in her prior medical history. Plaintiff had no general opposition to the Covid-19 vaccination. Rather, Plaintiff had significant chronic medical conditions.

26. Defendants' own employment application defines disability as an autoimmune condition.

27. Plaintiff put in an application for an exemption from vaccination on January 24, 2022. This application was also a request for accommodation due to her medical conditions. Despite the Defendants' false claims reported to the EEOC that Plaintiff's doctor did not provide any diagnosis or identification of her medical conditions, Plaintiff's January 24, 2022, exemption/accommodation request contained a note from her physician listing her medical conditions. Specifically listed were the nationally recognized ICD-9 diagnosis codes for the two autoimmune conditions Plaintiff suffers from, both B34.3 (parvo virus) and I73.00 (Raynaud's syndrome).

28. Plaintiff's request was denied. Defendants did not provide a reason for denial, nor did Defendants engage in any form of interactive process before denying Plaintiff's request.

29. Thereafter, Plaintiff submitted a second request with an accompanying letter from Dr. Hartridge dated April 7, 2022, to which were annexed redacted medical records as redacted by Dr. Hartridge and discussed by Dr. Hartridge in the accompanying letter to the Defendants.

30. Defendants **never** asked Plaintiff or her physician for unredacted medical records and never sought any clarification whatsoever from Plaintiff or her physician as to her health issues. In fact, during the entirety of the process of Plaintiff seeking an exemption/accommodation, Defendants never once contacted Plaintiff with even a single question about her medical conditions.

31. The Defendants refused to engage in the interactive process with the Plaintiff.

32. The Defendants refused to provide any type of accommodation to the Plaintiff, which could have included: covid testing prior to business travel outside her home office, a temporary leave of absence or other paid time off ("PTO"), none of which would have caused an undue hardship on Defendants.

33. Instead, Defendants claim to have obtained a medical opinion from a 3rd party physician who never spoke to the Plaintiff, who never examined the Plaintiff, and who never reviewed her unredacted medical records or spoke to Plaintiff's physician.

34. There was absolutely no business reason for Plaintiff's termination.

35. At the time Plaintiff was terminated she had been working unvaccinated for Defendants for an entire two and one-half years since Covid restrictions began in March 2020.

36. Plaintiff learned that during a November 2021 meeting with multiple of Defendants' employees and the CEO, Defendants' head of Marketing stated – [as to the Covid vaccination] "Don't get it. Be a stupid fucking idiot. Go ahead and die."

37. Defendants' vaccine mandates were self-constructed and not related to any statewide, or local government requirement. Defendants are private employers.

38. Shortly after Plaintiff's termination, Defendants lifted their vaccine mandate. Plaintiff was never contacted or offered her position back. Upon information and belief, Defendants were already contemplating the removal of the mandate at the time Plaintiff was terminated.

39. The Defendants terminated the Plaintiff because of her disability.

40. At all relevant times Plaintiff is a person with a disability within the meaning of the ADA.

41. At all relevant times herein, Plaintiff was an "Employee" entitled to protection within the meaning of the NYSHRL.

42. The available reasonable accommodations would not have been burdensome to Defendants.

43. Plaintiff was, at all relevant times, able to perform the essential functions of her job with reasonable accommodation.

44. Plaintiff's disability was a substantial motivating factor in Defendants' decision to terminate Plaintiff's employment.

45. Plaintiff has suffered significant financial losses as a result of the Defendants' actions including over one million dollars in future pensions losses.

46. Plaintiff has suffered severe emotional distress as a result of the Defendants' actions including anxiety, weight loss, fatigue, sleep disturbances and the need for psychological counseling.

**COUNT I**
**(Disability Discrimination ADA)**

47. Defendants unlawfully discriminated against Plaintiff with respect to the terms and conditions of her employment because of her disability. The disability discrimination includes but is not necessarily limited to having failed to provide Plaintiff with a reasonable accommodation, having failed to engage in the interactive process with the Plaintiff and having terminated Plaintiff's employment. By reason thereof, Defendants violated the ADA.

48. Defendants' conduct as described herein was intentional and done with forethought and with a total disregard for Plaintiff's rights.

49. The ADA Amendments Act of 2008 ("ADAAA") clarified that a "major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system..." 42 U.S.C.A. § 12102(2)(B). Furthermore, the ADA does not require that covered conditions limit a major life activity at all times.

50. As a direct and proximate result of the discriminatory practices of the Defendants, Plaintiff has sustained significant economic and compensatory damages. Plaintiff also seeks punitive damages.

**COUNT II**
**(Disability Discrimination NYSHRL)**

51. Defendants unlawfully discriminated against Plaintiff with respect to the terms and conditions of her employment because of her disability. The disability discrimination includes but is not necessarily limited to having failed to provide Plaintiff with a reasonable accommodation, having failed to engage in the interactive process with the Plaintiff and having terminated Plaintiff's employment. By reason thereof, Defendants violated the NYSHRL.

52. Defendants' conduct as described herein was intentional and done with forethought and with a total disregard for Plaintiff's rights.

53. As a direct and proximate result of the discriminatory practices of the Defendants, Plaintiff has sustained significant economic and compensatory damages. Plaintiff also seeks punitive damages.

**COUNT III**
**(Disability Discrimination NYCHRL)**

54. Defendants unlawfully discriminated against Plaintiff with respect to the terms and conditions of her employment because of her disability. The disability discrimination includes but is not necessarily limited to having failed to provide Plaintiff with a reasonable accommodation, having failed to engage in the interactive process with the Plaintiff and having terminated Plaintiff's employment. By reason thereof, Defendants violated the NYCHRL.

55. Defendants' conduct as described herein was intentional and done with forethought and with a total disregard for Plaintiff's rights.

56. As a direct and proximate result of the discriminatory practices of the Defendants, Plaintiff has sustained significant economic and compensatory damages. Plaintiff also seeks punitive damages.

**WHEREFORE,** Plaintiff respectfully demands judgment in her favor against Defendants as follows:

A. Declaring that Defendants have engaged in, and enjoining Defendants from continuing to engage in, unlawful employment practices prohibited by federal, New York State and New York City law;

B. Awarding Plaintiff compensatory damages for all back and future loss of wages, lost income, benefits, retirement losses, stock benefits losses, pain, suffering, stress, humiliation, mental anguish, and emotional harm;

C. Awarding Plaintiff liquidated damages;

D. Awarding Plaintiff treble damages;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff attorneys' fees, litigation costs, and expert/consultant fees;

G. Awarding Plaintiff pre- and post-judgment interest; and

H. Awarding Plaintiff such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury with respect to all issues properly triable by jury.

Dated: December 27, 2024
Albany, New York

**HARDING MAZZOTTI, LLP**

By: Kelly A. Magnuson
KELLY A. MAGNUSON, ESQ.
1 Wall Street
Albany, New York 12205
Tel.: (518) 862-1200
Email: Kelly.Magnuson@1800law1010.com

TO: TIAA Insurance Company
730 Third Avenue
New York, New York 10017

Nuveen, LLC
730 Third Avenue
New York, New York 10017