UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIELLE COCHRAN CARNETT,
                              Plaintiff,

                    -v-

TIAA INSURANCE COMPANY and
NUVEEN, LLC,
                              Defendants.

24-CV-9991 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

In September 2022, Plaintiff Danielle Cochran Carnett was terminated by her employers, Defendants TIAA Insurance Company and Nuveen, LLC, for failure to receive two COVID-19 vaccinations. In response, Plaintiff sued Defendants for disability discrimination under the Americans with Disabilities Act (the "ADA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL").

Now before the Court is Defendants' motion to dismiss Plaintiff's First Amended Complaint (the "Amended Complaint"). (ECF No. 16.) For the reasons that follow, the Court grants in part and denies in part Defendants' motion.

## I.    Background

The following facts are taken from Plaintiff's Amended Complaint, as well as documents cited or relied upon for the facts pleaded therein,[1] and are presumed true for the purposes of this motion. *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

---

[1] To her response to Defendants' motion to dismiss, Plaintiff appended her unredacted medical records, two accommodation requests, and a declaration alleging additional facts about her visits to NYC and comments made by Defendants. (ECF Nos. 19-20.) A court may consider statements and documents "incorporated in [the complaint] by reference" without converting a motion to dismiss into one for summary judgment. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted). "Even where a document is not

Danielle Cochran Carnett first began working for Defendants in 2000. (ECF No. 14 ("Am. Compl.") ¶ 12.) From 2001 until her termination in 2022, she was a remote employee. (*Id.* ¶ 18.) Plaintiff worked most of her hours from her home office in Greenwich, New York, but traveled to New York City for work purposes approximately once every six weeks, with additional visits as needed. (*Id.* ¶¶ 9, 13, 18.) Plaintiff claims that, despite her remote status, she was "designated by Defendants as part of [the New York City] office." (*Id.* ¶ 13.)

In 2010, Plaintiff was diagnosed with multiple chronic autoimmune conditions, including Raynaud's Syndrome, early-stage Scleroderma, rheumatoid arthritis, and chronic medical complications from a B-19 infection. (*Id.* ¶ 20.) These conditions have restricted Plaintiff's life activities, including by limiting her "use of her hands, walking, standing, and by [causing] generalized pain and discomfort in her joints." (*Id.* ¶ 22.) In late 2021, in response to the COVID-19 pandemic, Defendants instituted a COVID-19 vaccination requirement for all employees, remote or otherwise, and announced that they would consider employees' requests for medical exemptions. (*Id.* ¶ 24.) Plaintiff consulted with her doctor, Dr. Caroline Hartridge, who advised Plaintiff to refrain from receiving the COVID-19 vaccines because they could exacerbate her autoimmune conditions. (*Id.* ¶¶ 24-25.) Around this time, at a meeting in November 2021 at which Plaintiff was not present, Defendants' head of marketing remarked as

incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Id.* at 153 (quotation marks omitted). Because Plaintiff's requests for accommodation were referenced in her Amended Complaint (*see* ECF No. 14 ¶¶ 29, 31) and are integral to determining whether she experienced discrimination on account of her disability, this Court considers them in evaluating Defendants' motion to dismiss. But because "courts cannot consider new factual assertions in an affidavit submitted in opposition to a motion to dismiss," *Colliton v. Bunt*, 709 F. App'x 82, 83 (2d Cir. 2018) (summary order), this Court declines to consider Plaintiff's unredacted medical records or her appended declaration.

to employees not vaccinated against COVID-19: "Don't get it.  Be a stupid fucking idiot.  Go ahead and die."  (*Id.* ¶ 38.)

On January 24, 2022, Plaintiff applied for an exemption to the vaccination requirement as a reasonable accommodation of her disability and included a note from her physician listing her autoimmune conditions.  (*Id.* ¶ 29.)  Defendants denied the request without explanation.  (*Id.* ¶ 30.)  Plaintiff then submitted a second request for an exemption, which included another letter from Dr. Hartridge and redacted medical records.  (*Id.* ¶ 31.)  Based on a medical opinion from a third-party physician (*id.* ¶ 35), Defendants terminated Plaintiff in September 2022 for failure to receive two COVID-19 vaccinations (*id.* ¶ 19).

## II.    Procedural History

Plaintiff filed suit against Defendants on December 27, 2024, alleging discrimination under the ADA, NYCHRL, and NYSHRL.  (ECF No. 1.)  Defendants moved to dismiss Plaintiff's original complaint on March 17, 2025.  (ECF No. 7.)  On March 30, 2025, Plaintiff submitted a letter indicating her intention to file an amended complaint in response to Defendants' motion to dismiss (ECF No. 11), which she did on April 8, 2025 (Am. Compl.). Defendants filed a second motion to dismiss on April 21, 2025.  (ECF No. 16.)

## III.   Legal Standards

### A.    12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

A court must dismiss a case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The party asserting subject matter jurisdiction bears the burden of establishing by a preponderance of the evidence that subject matter jurisdiction exists.  *Id.*; *see also Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).  When evaluating a motion to dismiss under Rule 12(b)(1), courts "accept as true all

material factual allegations in the complaint," but "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992).

### B.      12(b)(6) Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. However, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks omitted). This standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support a plaintiff's claims. *Twombly*, 550 U.S. at 556.

"When there are well-pleaded factual allegations, a court should assume their veracity and *then* determine whether they plausibly give rise to an entitlement to relief." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quotation marks omitted). In conducting this analysis, courts "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009).

## IV.    Discussion

### A.      Disability Discrimination under the NYCHRL

The language of the NYCHRL makes clear "that its protections are afforded only to those who inhabit or are 'persons in' the City of New York." *Hoffman v. Parade Publications*, 15

N.Y.3d 285, 289 (2010).  "New York State courts lack subject matter jurisdiction over claims brought under the NYCHRL . . . by a non-resident plaintiff, when the alleged discriminatory conduct did not have an 'impact' on the plaintiff within New York City."  *Kraiem v. JonesTrading Institutional Servs. LLC*, 492 F. Supp. 3d 184, 195 (S.D.N.Y. 2020).  Put differently, "[u]nder the NYCHRL the impact of the employment action must be felt *by the plaintiff* in NYC."  *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 183 (2d Cir. 2016) (emphasis in original).  By contrast, the NYCHRL does not cover nonresidents of New York City "who have, at most, tangential contacts with the city."  *Hoffman*, 15 N.Y.3d at 291.  This rule also governs this Court's exercise of subject matter jurisdiction.  *See Troeger v. JetBlue Airways Corp.*, No. 23-CV-10859, 2024 WL 5146185, at *7 (S.D.N.Y. Dec. 17, 2024); *Kraiem*, 492 F. Supp. 3d at 199; *see also Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (treating NYSHRL's and NYCHRL's election-of-remedies limitations as restricting a federal court's subject matter jurisdiction); *Williams v. City of New York*, 916 F. Supp. 2d 517, 520-21 (S.D.N.Y. 2013) (same).

Plaintiff alleges that the impact of her termination was felt in New York City, and therefore is covered by the NYCHRL, because she (1) was designated by Defendants as part of the New York City office and (2) worked in the New York City office approximately once every six weeks, during which times she also stayed overnight in the city.  (ECF No. 21 ("Opp.") at 5, 7-8.)  Plaintiff also argues that she has alleged a sufficient connection to New York City because "key decisions about [Plaintiff's] employment, including her termination," as well as the November 2021 meeting in which the head of marketing made an unsavory comment about unvaccinated employees, occurred there.  (*Id.* at 8.)

These allegations, however, are virtually indistinguishable from those deemed insufficient for NYCHRL coverage in *Hoffman*.  There, the court held that the NYCHRL did not cover a nonresident plaintiff whose employer was headquartered in New York City, who "attended quarterly meetings in New York City," and whose termination decision "was made and executed in New York City."  15 N.Y.3d at 288, 292.  Other courts have since applied *Hoffman* to bar NYCHRL claims brought by nonresident plaintiffs whose connections to New York City are analogous to Plaintiff's.  *See Trotter v. Nat'l Football League*, 737 F. Supp. 3d 172, 192 (S.D.N.Y. 2024) (barring NYCHRL claim even though employer of nonresident plaintiff was "located in New York City," "decisions related to [plaintiff's] employment and termination were made in New York City," and plaintiff "worked in New York City and stayed overnight in New York City during his employment"); *Pedroza v. Ralph Lauren Corp.*, No. 19-CV-8639, 2020 WL 4273988, at *3 (S.D.N.Y. July 24, 2020) (barring NYCHRL claim even though nonresident plaintiff "traveled to New York City twelve times in the last six months of her employment"); *Fried v. LVI Servs., Inc.*, No. 10-CV-9308, 2011 WL 4633985, at *13 (S.D.N.Y. Oct. 4, 2011) (barring NYCHRL claim even though nonresident plaintiff "attended meetings in New York City, made regular phone calls to New York City, and secured contracts for [his employer] in New York City"), *aff'd*, 500 F. App'x 39 (2d Cir. 2012).

Plaintiff's connection to New York City is too tangential to trigger the protections of the NYCHRL.  Crucially, she does not allege that any discriminatory conduct took place while she was in New York City:  Plaintiff does not claim that she was present at the November 2021 meeting at which the director of marketing made targeted comments (*see* Am. Compl. ¶ 38), and the mere fact that Defendants made the decision to terminate her in New York City does not itself constitute a sufficient tie to the city under *Hoffman*.  Nor does the fact that Plaintiff was

officially designated as a member of the New York City office demonstrate that she felt the impact of her termination in New York City.  At most, Plaintiff has alleged that she worked from the New York City office once approximately every six weeks and stayed overnight during those visits.  (Opp. at 5, 7.)  And *Hoffman* and its progeny have made plain that this, by itself, is not enough to sweep a nonresident plaintiff within the ambit of the NYCHRL.

Accordingly, Plaintiff's NYCHRL claims are dismissed for lack of subject matter jurisdiction.

## B.     Disability Discrimination under the ADA and NYSHRL

The ADA and NYSHRL prohibit discrimination on the basis of disability in the "terms, conditions, and privileges of employment," including the termination of employees.  42 U.S.C. § 12112(a); *see* N.Y. Exec. L. 296(1)(a).  Plaintiff asserts both a "failure to accommodate" theory and an "adverse employment action" theory of discrimination under both statutes.

### 1.     Failure to Accommodate

The ADA and NYSHRL require that an employer reasonably accommodate an employee's known disability unless that accommodation would impose an undue hardship on the employer.  42 U.S.C. § 12112(b)(5)(A); N.Y. Exec. L. 296(3)(a).  To make out a prima facie case of discrimination based on a "failure to accommodate" theory, Plaintiff must establish by a preponderance of the evidence that "(1) [her] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [her] employer refused to make a reasonable accommodation."  *Tudor v. Whitehall Cent. Sch. Dist.*, 132 F.4th 242, 246 (2d Cir. 2025) (cleaned up); *see also Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) ("A claim of disability discrimination under the New York State

7

Human Rights Law . . . is governed by the same legal standards as govern federal ADA claims.").

No party disputes that Defendants are subject to the ADA or that Plaintiff was otherwise qualified to perform the essential functions of her job.   Instead, Defendants contend that Plaintiff is not disabled within the meaning of the ADA because her purported disability is speculative and she has not provided enough facts about the nature and severity of her autoimmune conditions.  (ECF No. 17 ("Mem.") at 14-15.)

Under the ADA, a "disability" is a "physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A).  "The ADA contains a non-exhaustive list of 'major life activities,' which includes 'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.'" *Anderson v. City of New York*, 712 F. Supp. 3d 412, 432 (S.D.N.Y. 2024) (quoting 42 U.S.C. § 12102(2)(A)).  A "major life activity" also includes "the operation of a major bodily function," including "functions of the immune system."  42 U.S.C. § 12102(2)(B).  Regulations issued by the Equal Employment Opportunity Commission ("EEOC") provide that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA," and "is not meant to be a demanding standard."  29 C.F.R. § 1630.2(j)(1)(i).

In her complaint, Plaintiff states that she was diagnosed with multiple "chronic and incurable" autoimmune conditions in 2010, describes her symptoms, and explains how they limit her ability to perform manual tasks and physical activities like walking, standing, and lifting. (Am. Compl. ¶¶ 20-22.)  Plaintiff also claims that she has experienced "ongoing immune system

dysfunction" as a result of "[c]hronic medical complications from a B-19 infection." (*Id.* ¶ 20.) Plaintiff, however, did not seek reasonable accommodations for her existing physical limitations. Instead, she sought a medical exemption from Defendants' COVID-19 vaccination requirement on the theory that "health complications . . . could arise from the [COVID-19] vaccine in light of her medical conditions." (*Id.* ¶ 25.) The question is whether Plaintiff has sufficiently alleged that her risk of an adverse reaction to the COVID-19 vaccine qualifies as a disability under the ADA. This Court concludes that she has.

Defendants point out that several courts in this circuit have dismissed ADA claims based on hypothetical negative reactions to the COVID-19 vaccine. *See, e.g.*, *Cecere v. Canisius Univ.*, No. 24-CV-00155, 2025 WL 712748, at *5 (W.D.N.Y. Mar. 5, 2025), *aff'd*, No. 25-798, 2025 WL 3239732 (2d Cir. Nov. 20, 2025); *Phillips v. White Plains Hosp.*, No. 23-CV-11326, 2025 WL 448808, at *4 (S.D.N.Y. Feb. 10, 2025); *Mercer v. ViacomCBS/Paramount*, No. 22-CV-6322, 2024 WL 3553133, at *4 (S.D.N.Y. July 26, 2024). But these cases are factually distinguishable. None of the plaintiffs in these cases had existing medical conditions that could plausibly increase their risk of a serious adverse reaction to the COVID-19 vaccine. Rather, they premised their ADA claims solely on hypothetical allergies to the COVID-19 vaccine, which were, in turn, cursorily alleged and only thinly supported by evidence. *See Cecere*, 2025 WL 712748, at *5 ("[Plaintiff's doctor's] letter does not indicate that Plaintiff will have an allergic reaction to the COVID-19 vaccine but just generically references prior reactions to unspecified vaccines and states with no specifics that Plaintiff 'is unable to get the [COVID]-19 vaccine.'"); *Phillips*, 2025 WL 448808, at *4 (finding insufficiently specific a doctor's note stating that the plaintiff's "genetic bio-variance could cause [a] massive allergic reaction" to the COVID-19 vaccine); *Mercer*, 2024 WL 3553133, at *4 (same).

9

By contrast, the doctor's note attached by Plaintiff to her second request for accommodation, though not a picture of clarity, outlined her medical conditions and provided a reasoned basis for why those conditions render Plaintiff vulnerable to a serious adverse reaction to the COVID-19 vaccine. Specifically, Dr. Hartridge attached redacted documentation of Plaintiff's medical conditions and stated that Plaintiff's "family history of connective tissue disease and autoimmune disease . . . puts her at an exceptionally high risk of complications from this vaccine." (ECF No. 19-3 at 2.) She opined that Plaintiff's "Parvo B-19 status increases her risk of influenza viral origin myocarditis," which is significant since "myocarditis status post COVID-19 vaccination has been widely reported in peer review literature." (*Id.*) And she claimed that Plaintiff's underlying conditions "predisposes her to developing severe anemia," which "outweighs the benefit of vaccination with any of t[h]e COVID-19 formulations." (*Id.*)

Certainly, Plaintiff's case would have been strengthened had Dr. Hartridge supplied more detailed allegations about the nature, length, and severity of the complications Plaintiff was at risk of experiencing due to the COVID-19 vaccine. But at this stage, Plaintiff was required to plead only "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Given the substance of Dr. Hartridge's note, Plaintiff has adequately pleaded that her projected reaction to the COVID-19 vaccine was more than sheer speculation and potentially serious enough to qualify as a disability under the ADA. *Cf. O'Reilly v. Med. Facilities of Am., Inc.*, No. 24-CV-00037, 2025 WL 1113225, at *5-6 (W.D. Va. Apr. 15, 2025) (concluding that plaintiff adequately alleged that her potential adverse reaction to the COVID-19 vaccine, given her asthma, qualified as a disability under the ADA).

10

In their briefing, Defendants do not argue that a reasonable accommodation was not possible or that it imposed an undue hardship.  Nor do they supply any details about the process by which they reviewed and denied Plaintiff's request for accommodation, or address Plaintiff's allegation that they consulted a third-party physician before terminating her.  (*See* Am. Compl. ¶¶ 32-35.)  Instead, Defendants argue that because autoimmune conditions "are not one of the contraindications to receiving the COVID-19 vaccine as described by the [Center for Disease Control and Prevention]," they were not required to provide Plaintiff with a reasonable accommodation.  (Mem. at 17-18.)  But the Center's exclusion of Plaintiff's medical conditions from its list of contraindications does not definitively establish that Plaintiff's request for accommodation was frivolous as a matter of law, particularly given Dr. Hartridge's opinion to the contrary.  Rather, whether Plaintiff's medical conditions in fact heightened her risk of a serious adverse reaction to the COVID-19 vaccine goes to questions of fact that weigh against dismissal at this juncture.

Accordingly, Defendants' motion to dismiss is denied as to Plaintiff's failure-to-accommodate claims under the ADA and NYSHRL.

### 2.    Adverse Employment Action

Plaintiff also contends that she was unlawfully terminated on account of her disability. To make out a prima facie case of discrimination based on an "adverse employment action" theory under either the ADA or NYSHRL, Plaintiff must establish that: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability." *Kinneary v. City of New York*, 601 F.3d 151, 156 (2d Cir. 2010); *see Graves*, 457 F.3d 184 n.3.  It is undisputed that Defendants are

covered by the ADA, that Plaintiff was qualified to perform the essential functions of her job, and that Plaintiff's termination qualified as an "adverse employment action." Moreover, because this Court has concluded that Plaintiff has pleaded that she has a disability within the meaning of the ADA, the only question at issue is whether Plaintiff was terminated "because of [her] disability." *Kinneary*, 601 F.3d at 156.

"In employment discrimination cases that do not turn on the employer's provision of a reasonable accommodation, the plaintiff's ultimate burden is always to show that the protected characteristic in question played a motivating role in, or contributed to, the employer's decision" to terminate an employee. *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 107 (2d Cir. 2001) (quotation marks omitted). In other words, there must be a "causal connection between a disability and an adverse employment action to support ADA liability as discrimination 'because of disability.'" *Id.* Plaintiff has failed to demonstrate the requisite causal connection here. In her complaint, Plaintiff admits that she was terminated "for not being vaccinated" in violation of Defendants' company-wide vaccination mandate. (Am. Compl. ¶ 18.) She does not allege that the vaccination mandate was unequally enforced against disabled employees, nor does she otherwise allege facts to suggest that it was her disability, rather than her non-compliance with Defendants' vaccination requirement, that led to her termination. The Second Circuit has held "that discharging an employee for failing to comply with generally applicable safety policies does not, without more, equate to impermissible discrimination under the ADA." *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 163 (2d Cir. 2024).

Plaintiff attempts to raise an inference of discriminatory motive by alleging that, during a November 2021 meeting, Defendants' head of marketing commented as to employees who did not receive COVID-19 vaccinations: "Don't get it. Be a stupid fucking idiot. Go ahead and

12

die." (*Id.* ¶ 38.)  There is no allegation, however, that the head of marketing was involved in—or that the comment was made in relation to—the decision to terminate Plaintiff.  Additionally, the head of marketing is alleged to have made the remark ten months before Plaintiff was terminated, weakening any inference that disability discrimination played a motivating role in her termination.  *See Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) ("[T]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination."), *abrogated on other grounds by Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 177-78 (2009).  Plaintiff also cursorily asserts that "Defendants were already contemplating the removal of the [vaccination] mandate at the time Plaintiff was terminated."  (*Id.* ¶ 40.)  But she provides no facts to support this assertion or otherwise make out a claim of disability discrimination.

Because Plaintiff fails to "set forth any factual circumstances from which a disability-based motivation for [her termination] might be inferred," *Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 25 (2d Cir. 2014) (summary order) (brackets omitted) (quoting *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)), her "adverse employment action" claims of disability discrimination under the ADA and NYSHRL are dismissed for failure to state a claim.

## V.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Amended Complaint is GRANTED in part and DENIED in part.  Defendants' earlier motion to dismiss, filed at Docket Number 7, is denied as moot.

Defendants shall file an answer to the remaining claims within 14 days after the date of this Opinion and Order.  *See* Fed. R. Civ. P. 12(a)(4)(A).

The stay of discovery is hereby lifted.  The parties shall file a revised proposed case management plan within 21 days after the date of this Opinion and Order.

The Clerk of Court is directed to close the motions at Docket Numbers 7 and 16.

SO ORDERED.

Dated: January 6, 2026
      New York, New York

                                      J. PAUL OETKEN
                                  United States District Judge